809 So.2d 900 (2002)
INTER-ACTIVE SERVICES, INC., Appellant,
v.
HEATHROW MASTER ASSOCIATION, INC., Appellee.
No. 5D01-1158.
District Court of Appeal of Florida, Fifth District.
March 15, 2002.
*901 C. Thomas Davidson, Richard Oliver, Stephen O. Decker and David L. Schrader of McWhirter, Reeves, McGlothlin, Davidson, Decker, Kaufman, Arnold & Steen, P.A., Tampa, for Appellant.
David B. King, Mayanne Downs and Thomas A. Zehnder of King, Blackwell & Downs, P.A., Orlando, for Appellee.
PALMER, J.
Inter-Active Services, Inc. ("Inter-Active") appeals the summary judgment entered by the trial court in favor of Heathrow Master Association, Inc. ("Heathrow"), claiming that the court erred in determining that its claim for damages was barred by the doctrine of res judicata and by Florida Rule of Civil Procedure 1.170. Concluding that neither res judicata nor rule 1.170 is applicable to the claim raised in this action, we reverse.
These parties are before this court for the second time, both appeals involving claims arising from the contractual relationship between the parties. See Inter-Active Services, Inc. v. Heathrow Master Association, Inc., 721 So.2d 433 (Fla. 5th DCA 1998) (Inter-Active I). The facts as established in Inter-Active I were that Heathrow executed a service contract with Intrusystems, Inc. whereby Intrusystems agreed to provide for the installation and subsequent monitoring of security systems in existing and future homes in Heathrow's residential development. The contract was subsequently assigned by Intrusystems to Inter-Active. In February of *902 1995, Heathrow notified Inter-Active that their contract would terminate on May 1, 1995, five years after its execution. Inter-Active disagreed and responded by filing a petition for temporary and permanent injunction arguing that the contract would not terminate until five years after the date the last security system was installed. Heathrow counterclaimed seeking declaratory relief and money damages. The trial court ruled that Heathrow was correct that the contract terminated on May 1, 1995. Inter-Active appealed this ruling. Upon review we reversed, ruling that the parties' contract would not terminate until five years after the date the last security system was installed. The matter was remanded to the trial court with instructions to enter a permanent injunction in favor of Inter-Active.
After the Inter-Active I opinion was issued, Inter-Active filed a separate action, the instant law suit, against Heathrow seeking damages for breach of contract. Inter-Active's complaint explained that, from April 25, 1995 (the date on which Inter-Active filed suit in Inter-Active I), until January 31, 1996, (the date of trial in Inter-Active I), Heathrow permitted Inter-Active to continue fulfilling its obligations under the contract; however, after the trial court's ruling was entered on January 31, 1996, Heathrow terminated the parties' contract and forced Inter-Active to vacate the property. Inter-Active was forced to remain off the property until October of 1999, the date the Inter-Active I decision was issued by this court. The complaint alleged that Heathrow's improper removal of Inter-Active from the property constituted a material breach of the parties' contract and therefore Inter-Active was entitled to recover damages for the losses which were incurred during that time period. Heathrow responded by denying liability and asserting, as affirmative defenses, that Inter-Active's breach of contract action was barred (1) by the doctrine of res judicata, and (2) by the doctrine of waiver in that, as a compulsory counterclaim, it should have been raised in response to Heathrow's counterclaim for declaratory relief in the initial injunction action. The trial court entered summary judgment in favor of Heathrow concluding that when Heathrow breached the parties' contract by forcing Inter-Active to vacate the property, the permanent injunction had not yet been issued by the trial court on remand in Inter-Active I and that, accordingly, Inter-Active had the ability, and thus was required, to file a counterclaim for damages in that lawsuit. The trial court cited the doctrine of res judicata and rule 1.170 of the Florida Rules of Civil Procedure to support its ruling. We disagree.
As our Supreme Court explained in Albrecht v. State, 444 So.2d 8 (Fla.1984), superseded by statute on other grounds, Bowen v. Fla. Dep't. of Envtl. Regulation, 448 So.2d 566 (Fla. 2d DCA 1984), in order for res judicata to apply four identities must occur simultaneously: identity of the thing sued for, identity of the cause of action, identity of parties, and identity of the quality in the person for or against whom the claim is made. Further, res judicata can be applied only if the subsequent lawsuit is based upon the same cause of action as the prior lawsuit. The determining factor in deciding whether the causes of action are the same is whether the facts and evidence necessary to maintain suit are the same in both actions.
In Inter-Active I, "the thing sued" for was an injunction against Heathrow's threatened breach of the parties' contract, whereas "the thing sued" for here was money damages sustained by Inter-Active as a result of Heathrow's actual breach of contract. The instant damages arose after trial in Inter-Active I. The facts and evidence necessary to prove Inter-Active's *903 breach of contract claim are different from the facts and evidence which were necessary to prove Inter-Active's claim for injunctive relief and thus, an identity of the "thing sued for" does not exist in this case.
Furthermore, as for the identity of the causes of action, Inter-Active's instant claim for money damages arising out of its forced removal from Heathrow's property did not even exist at the time Inter-Active filed its original injunction action. Instead, the damage claim did not arise until the trial court's judgment adverse to Inter-Active's injunctive complaint was entered and Heathrow forced Inter-Active off of its property.
The facts in Bondu v. Gurvich, 473 So.2d 1307 (Fla. 3d DCA 1984), are analogous to the instant case on this issue. Bondu involved a patient who was admitted to the hospital, had surgery, and then died. The patient's wife sued, charging that the hospital and the anesthesiologist were negligent, and that the hospital was negligent per se by failing to provide her with requested medical records, thereby frustrating her ability to pursue certain proof necessary to establish her case. The wife also claimed that the hospital intentionally interfered with her right of action by losing and/or destroying records, again thereby frustrating her ability to obtain certain proof which might be necessary to establish her case. A summary judgment was entered in favor of all the defendants since, without the patient's medical records, no expert testimony could establish medical malpractice. The wife thereafter moved to amend her original complaint and also filed a separate action against the hospital. The hospital filed a motion for judgment on the pleadings asserting that the trial court's dismissal with prejudice of the wife's first lawsuit was res judicata as to the new action. In reversing, the Third District explained that res judicata did not exist because the new suit set forth a cause of action which was different from the counts in the earlier action:
Here, the cause of action against the hospital for its negligent loss of medical records causing the plaintiff to lose her medical malpractice action was not in existence when Bondu filed her original action and in fact did not arise until the summary judgment adverse to her medical malpractice claims was entered
473 So.2d at 1310 n. 2. See also Hialeah Race Course, Inc. v. Gulf Stream Park Racing Ass'n, 245 So.2d 625, 628 (Fla. 1971) (ruling that: "When other facts or conditions intervene before the second suit, furnishing a new basis for the claims and defenses of the respective parties, the issues are no longer the same and the former judgment cannot be pleaded in bar of the second action.")
We further reject Heathrow's contention that the doctrine of res judicata must be applied in this case based upon Village Key & Saw Shop, Inc. v. Gupton, 656 So.2d 164 (Fla. 5th DCA 1994)(Village Key II) because Village Key II is factually distinguishable and thus not controlling.
The relevant facts at issue there were that in the first Village Key action, (Village Key I)[1], the trial court refused Village Key's request to issue an injunction enforcing a non-compete agreement against Gupton. While the matter was pending on appeal, Village Key filed a separate lawsuit against Gupton alleging breach of the parties' non-compete agreement (Village Key II). The trial court dismissed the second lawsuit, reasoning that res judicata barred the lawsuit. Upon review, this court affirmed, holding:

*904 We conclude the lower court did not err in deciding that Village Key could have sought and now should seek all its remedies for breach of the non-compete agreement in the first action.
Village Key, 656 So.2d 164. In reaching this conclusion, the Fifth District relied on the fact that Village Key's first lawsuit was still pending in the circuit court. Importantly, the opinion does not state that the decision was affirmed on the basis of res judicata, presumably because no final judgment had been entered in Village Key I and thus there was no judgment upon which the doctrine of res judicata could be applied. We conclude that the court's decision necessarily rested upon the determination that Village Key's second lawsuit would constitute an improper splitting of a cause of action, and that the breach of contract claim should properly have been brought in the first case, which was still pending. See Greenstein v. Greenbrook, Ltd. 443 So.2d 296 (Fla. 3d DCA 1983).
Heathrow contends that Inter-Active I was still pending after remand from this court when its alleged breach of contract occurred and therefore, under the law as expressed in Village Key II, Inter-Active was required to amend its original complaint to add its claim for money damages, instead of filing a separate lawsuit thereon. We disagree because, unlike the breach of contract claims raised in Village Key II, Inter-Active's instant breach of contract claim is not a compulsory counterclaim and thus no improper splitting of a cause of action has occurred.
Rule 1.170(a) of the Florida Rule of Civil Procedure defines a compulsory counterclaim as a claim which arises out of the transaction or occurrence which is the subject matter of the opposing party's claim. The rule further provides that a party's failure to allege a compulsory counterclaim constitutes a waiver of the right to recover on same. The purpose of the compulsory counterclaim rule is to promote judicial efficiency by requiring defendants to raise claims arising from the same transaction or occurrence as the plaintiff's claim. Del Rio v. Brandon, 696 So.2d 1197 (Fla. 3d DCA 1997). Inter-Active's instant breach of contract claim did not exist either at the time it filed its initial complaint for injunctive relief, or at the time it answered Heathrow's counterclaim thereon. As the Fourth District held in Kellogg v. Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., 2001 WL 1504231 (Fla. 4th DCA 2001):
A counterclaim is not compulsory if does not "exist at the time the answer is served." Trawick, Florida Practice and Procedure section 12-3, at 216 (2000 ed). A counterclaim that has not accrued is not mature, so that it is not a compulsory counterclaim within the meaning of rule 1.170(a).... The concept that a counterclaim must be mature to be compulsory under rule 1.170(a) is reflected in Florida Rule of Civil Procedure 1.170(e), entitled "Counterclaim Maturing or Acquired After Pleading." That rule provides that a "claim which matured or was acquired by the pleader after serving the pleading may be presented as a counterclaim by supplemental pleading with the permission of the court." Id. If the rules required an unmatured claim to be filed as a compulsory counterclaim, then rule 1.170(e) would be unnecessary.
See also Daytona Beach Racing & Recreational Facilities Dist. v. Volusia County, 355 So.2d 175 (Fla. 1st DCA 1978), aff'd, 372 So.2d 419 (Fla.1979) (recognizing that it is not the function of an amendment to a pleading to cover subsequently accruing rights). Accord Orlando Sports Stadium, *905 Inc. v. Sentinel Star Co., 316 So.2d 607 (Fla. 4th DCA 1975).
REVERSED and REMANDED.
THOMPSON, C.J. and SAWAYA, J., concur.
NOTES
[1] Village Key & Saw Shop, Inc. v. Gupton, 639 So.2d 102 (Fla. 5th DCA) app'd, 656 So.2d 475 (Fla.1995).